**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

11-14063-CIV-MOORE/LYNCH

**U.S. COMMODITY FUTURES**
**TRADING COMMISSION,**

                    **Plaintiff,**

**vs.**

**DAVID L. ORTIZ,**
**GOYEP INTERNATIONAL, INC., and**
**ROYAL RETURNS, INC.,**

                    **Defendants, and**

**LOREDANA ORTIZ, and**
**NATURAL HEALTH MATTERS,**
**L.L.C.,**

                    **Relief Defendants.**

**ORDER OF DEFAULT JUDGMENT**
**FOR PERMANENT INJUNCTION AND OTHER ANCILLARY RELIEF**
**AGAINST DEFENDANTS AND RELIEF DEFENDANTS**

On February 23, 2011, Plaintiff Commodity Futures Trading Commission

("Commission" or "CFTC") filed a Complaint against David L. Ortiz ("Ortiz"), Goyep

International, Inc. ("Goyep") and Royal Returns, Inc. ("Royal Returns")(collectively

"Defendants"), and Loredana Ortiz ("L. Ortiz") and Natural Health Matters, L.L.C. ("Natural

Health") (collectively "Relief Defendants") seeking injunctive and other equitable relief.

The Complaint alleged that the Defendants engaged, are engaging or are about to engage in

fraudulent acts and practices in connection with the handling of customer funds and the

trading of off-exchange retail foreign currency ("forex") in accounts to be managed by the

Defendants which constitute violations of Sections 4b(a)(2)(A) - (C) of the Commodity

Exchange Act (the "Act"), as amended by the Food, Conservation, and Energy Act of 2008, Pub. L. No. 110-246, Title XIII (the CFTC Reauthorization Act of 2008) ("CRA")) §§ 13101-13204, 122 Stat. 1651 (enacted June 18, 2008), and the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010 ("Dodd-Frank Act"), Pub. L. No. 111-203, Title VII (the Wall Street Transparency and Accountability Act of 2010), §§701-774, 124 Stat. 1376 (enacted July 21, 2010), to be codified at 7 U.S.C. §§ 6b(a)(2)(A) - (C).  On and after October 18, 2010, Ortiz and Goyep are also alleged to have violated Sections 5.3(a)(3)(i) and 5.3(a)(3)(ii) of the Commission's Regulations ("Regulations"), to be codified at 17 C.F.R. §§ 5.3(a)(3)(i) and 5.3(a)(3)(ii).

Each of the Defendants and Relief Defendants was served pursuant to Federal Rule of Civil Procedure ("FED. R. CIV. P.") 4(e)(2), by personal service of the summons and Complaint on March 1, 2011. (ECF No. 17)

Each of the Defendants and Relief Defendants has failed to plead or otherwise defend as to the Complaint within the time permitted by FED. R. CIV. P. 12(a)(1).  On March 25, 2011, the Clerk entered a default against each of the Defendants and Relief Defendants pursuant to FED. R. CIV. P. 55(a).  (ECF No. 29)  On March 28, 2011, the Defendants and Relief Defendants filed an Answer to the Complaint.  (ECF No. 30).  On March 31, 2011, that Answer was stricken in its entirety since none of the Defendants or Relief Defendants had moved to vacate the Clerk's Order of Entry of Default. (Dkt.31)

The Commission has filed a Motion for Default Judgment Against Defendants Ortiz, Goyep and Royal Returns and against Relief Defendants L. Ortiz and Natural Health ("Motion"), a Memorandum in Support of Plaintiff's Motion for Default Judgment

("Memorandum of Law"), and a Proposed Order of Default Judgment for Permanent

Injunction and Other Ancillary Relief.  Plaintiff seeks a finding that Defendants be found

liable for each cause of action alleged in the Complaint, that Relief Defendants be found

liable for receipt of ill-gotten gains from the Defendants to which they have no legitimate

entitlement and that Ortiz, Goyep and Royal Returns should be permanently enjoined from

violating the Act and Regulations.  Further, the Plaintiff requests that the Court enter an

order holding each of the Defendants jointly and severally liable for disgorgement of

$292,676.62, plus pre- and post-judgment interest thereon, L. Ortiz and Natural Health

jointly and severally liable for disgorgement of $20,604, plus pre- and post-judgment interest

thereon, and a joint and several civil monetary penalty of $878,000 against Defendants.

This Court has considered the Motion, the CFTC's Memorandum of Law, the

declarations and exhibits filed by Plaintiff, and all other papers filed herein, and being fully

advised in the premises,

**THE COURT FINDS**:

## I.  FINDINGS OF FACT

1.      This Court has jurisdiction over this action pursuant to Section 6c of the Act,

7 U.S.C. § 13a-1 (2006), which authorizes the Commission to seek injunctive relief against

any person whenever it shall appear to the Commission that such person has engaged, is

engaging, or is about to engage in any act or practice constituting a violation of any provision

of the Act or any rule, regulation or order thereunder.

2.      Venue properly lies with this Court pursuant to Section 6c of the Act,

7 U.S.C. § 13a-1(e) (2006), in that Ortiz, Goyep, Royal Returns, L. Ortiz and Natural Health

transacted business in this district, and the acts and practices in violation of the Act have occurred, are occurring, or are about to occur within this district.

3. Service was properly made upon Ortiz, Goyep, Royal Returns, L. Ortiz and Natural Health by personal service of a copy of the summons and Complaint to Ortiz and L. Ortiz on March 1, 2011.

4. Ortiz, Goyep, Royal Returns, L. Ortiz and Natural Health have failed to timely answer or otherwise defend the CFTC's Complaint within the time permitted by FED. R. CIV. P. 12. Defendant Ortiz and Relief Defendant L. Ortiz are not in the military service, nor are either of them an infant or incompetent.

5. Plaintiff's Motion was properly served on all the Defendants by sending a copy by certified mail on May 12, 2011.

6. The allegations of the CFTC's Complaint are well-pleaded and hereby taken as true. This Order is supported by the following facts:

**Plaintiff**

7. Plaintiff **Commodity Futures Trading Commission** is an independent federal regulatory agency that is charged by Congress with responsibility for administering and enforcing the provisions of the Act, 7 U.S.C. §§ 1 *et seq*. (2006), and the Regulations promulgated thereunder, 17 C.F.R. §§ 1.1 *et seq*. (2011).

**Defendants**

8. Defendant **David L. Ortiz** resides in Vero Beach, Florida, and for some of the relevant time period resided in Pembroke Pines, Florida. Ortiz is the director and chief executive officer ("CEO") of Goyep and the president of Royal Returns. At all material

times, Ortiz controlled Goyep's and Royal Return's bank accounts. As Goyep's CEO, Ortiz

opened and managed all of Goyep's trading accounts. Ortiz also controlled all aspects of

Goyep's and Royal Return's solicitations including controlling their internet promotional

materials. Therefore, Ortiz is a controlling person of both Goyep and Royal Return and held

himself out to the public as such. Ortiz has never been registered with the CFTC.

9.      Defendant **Goyep International, Inc.** is a Florida corporation created on

July 31, 2008, with its principal place of business in Vero Beach, Florida, at Ortiz's

residential address. Goyep also conducted business at Ortiz' prior residential address in

Pembroke Pines and has operated a website under the name "Forex Futures Trader." Goyep

has never been registered with the CFTC.

10.      Defendant **Royal Returns, Inc.** is a Florida corporation created on

December 10, 2004, and involuntarily dissolved on September 16, 2005, but which has

continued to engage in business. Royal Returns' principal place of business is in Hollywood,

Florida, and it also conducted business at Ortiz's residential addresses in Vero Beach and

Pembroke Pines. Royal Returns has never been registered with the CFTC.

11.      Relief Defendant **Loredana Ortiz** resides in Vero Beach, Florida, at the same

residential address as Ortiz, and for some of the relevant time period resided at Ortiz'

residence in Pembroke Pines. L. Ortiz is the manager of Natural Health and was an Assistant

Director of Royal Returns, a co-signer on Royal Returns' bank account at the Bank of

America ("BOA"), and shared control over the trading for one of Goyep's futures trading

accounts. L. Ortiz has never been registered with the CFTC.

12.    Relief Defendant **Natural Health Matters, L.L.C.** is a Florida limited liability company whose manager is L. Ortiz.  Natural Health has its principal place of business in Pembroke Pines but also does business at Ortiz's residential address in Vero Beach.  At the time of its formation, Natural Health represented that its business purpose was "holistic health care and freelancing services."  Natural Health has never been registered with the CFTC.

## A.    Defendants' Operations

13.    Beginning in at least May 2008, Royal Returns, by and through Ortiz, began soliciting members of the general public in south Florida as well as Ortiz's personal acquaintances to trade forex.

14.    Sometime after Goyep became incorporated in July 2008, Ortiz expanded his solicitation efforts throughout the United States by advertising Goyep on the internet through at least two internet websites, each of whose domain names were registered to Royal Returns.

15.    Since May 2008, Royal Returns and Goyep have solicited at least eleven customers who invested $491,446.75 to trade forex.

16.    Ortiz variously instructed customers to send their investment funds to Royal Returns, Goyep, Ortiz's personal bank account or to Natural Health.

17.    Ortiz also told customers that they would have individual managed trading accounts and that Royal Returns or Goyep would be responsible for the trading activity.

18.     The Defendants have represented on www.forexfuturestrader.com, a Goyep website owned by Royal Returns and administered by Ortiz, that they were offering "Individually Managed Accounts" to customers to trade forex.

**B.      Defendants' False Representations and Omissions**

19.     Ortiz made false representations to customers and prospective customers to persuade them to invest or to add to their investment amount.  For instance, Ortiz told Royal Returns and Goyep customers that they were guaranteed a profit of 10% per month. Defendants falsely represented that these returns on investment would be produced by successful forex trading, when, in fact, nearly all of Defendants' forex trading resulted in substantial losses.

20.     The Defendants also falsely represented on the Goyep website that Ortiz is registered with the Securities and Exchange Commission ("SEC"), when, in fact, Ortiz has never been registered with the SEC.  The website also included the Defendants' claim that Goyep has "over thirty years of investment experience," when, in fact, Goyep has been in existence less than three years, and Ortiz has only two to three years of forex trading experience.

21.     Ortiz falsely told customers that he would refund their investment deposits if requested to do so when, in fact, he simply paid customers who demanded a return of their principal with funds invested by other customers.  Defendants, therefore, are operating a Ponzi scheme.  Further, in at least one instance, Ortiz paid a Royal Returns customer purported "profits" on his investment using the customer's own investment principal.

22.     Ortiz also persuaded some customers not to withdraw their principal or purported monthly earnings by falsely telling them that doing so would result in significant trading losses due to a premature liquidation of open trading positions.

C.     **Goyep's Actual Trading Losses and Misappropriation of Customer Funds**

23.     Out of the $491,446.75 customers gave the Defendants to trade forex, the Defendants deposited approximately one third of the customer funds into four trading accounts in Goyep's name, and lost $113,979.10 trading forex.  The Defendants also returned $52,500 to customers.  The Defendants misappropriated the remaining sum of $313,280.62 by, for example, using the funds  for personal shopping at retail department stores, travel, resort hotels, restaurants, utility bills, personal credit cards and car payments, and by sending, or having some customers send their funds directly, to the Relief Defendants, who also did not use those funds for forex trading.

D.     **Defendants' Issuance of False Statements to Customers**

24.     To conceal and perpetuate their fraud, the Defendants issued monthly account statements that falsely reported customer earnings and account balances.  Ortiz issued these false statements to customers by posting them on Royal Return's websites that customers accessed through personal passwords supplied by Ortiz or by simply sending customers emails reporting their account status.  Ortiz also issued at least one statement under the name "Forex Futures Trader" to a Goyep customer by posting it on the website owned by Royal Returns, www.forexfuturestrader.com.   These account statements reported purported profits that were inconsistent with the monthly returns the Defendants actually realized from their forex trading.

25.     The account statements Defendants issued to customers failed to disclose that Defendants were experiencing substantial trading losses and were misappropriating customer funds.

**E.      Defendants' Inability to Repay Customers**

26.     In August 2009, a customer contacted Ortiz to close her two-month old Goyep investment account.  Ortiz initially delayed reimbursing her by explaining that he could not do so due to multiple factors beyond his control, and for a period of several weeks, simply ignored her repeated phone calls and emails.  Ortiz eventually sent this customer a check that the customer could not negotiate due to insufficient funds in the account upon which it was drawn.  By late October 2009, more than eight weeks later, Ortiz wired a refund to this customer with funds from another investor.

27.     Current customers are not able to withdraw their investment funds from Defendants as such funds have either been lost trading, paid to other customers or misappropriated.

## II. CONCLUSIONS OF LAW

28.     From at least June 18, 2008, through the present, in or in connection with foreign currency contracts, made, or to be made, for or on behalf of other persons, Defendants cheated or defrauded, or attempted to cheat or defraud, customers or prospective customers and willfully deceived or attempted to deceive customers or prospective customers by, among other things, knowingly:  (a) fraudulently soliciting customers and prospective customers by telling them that they were guaranteed a profit of 10% per month, that Ortiz was registered with the SEC, and that Goyep has over thirty years of investment experience;

(b) misappropriating customer funds that purportedly were to be used to trade forex;

( c ) misrepresenting  forex trading activity that purportedly occurred on behalf of customers, including by knowingly providing some customers with account statements that misrepresented the value of the customers' investments or claiming that Defendants' trading was producing profits when, in fact, it was not; (d) misrepresenting that Defendants would refund customer deposits when, in fact, they repaid customers with funds invested by other customers, all in violation of Sections 4b(a)(2)(A)-(C) of the Act, as amended by the CRA, to be codified at 7 U.S.C. §§ 6b(a)(2)(A)-(C).

29.     Ortiz engaged in the acts and practices described above knowingly or with reckless disregard for the truth.

30.     From October 18, 2010 to the present, Goyep engaged and continues to engage in activities as a CTA without benefit of registration, in violation of Regulation 5.3(a)(3)(i), to be codified at 17 C.F.R. § 5.3 (a)(3)(i).

31.     From October 18, 2010 to the present, in soliciting persons for off-exchange retail foreign currency trading on behalf of Goyep while associated with Goyep, Ortiz acted as an AP of Goyep without the benefit of registration, in violation of Regulation 5.3(a)(3)(ii), to be codified at 17 C.F.R. § 5.3(a)(3)(ii).

32.     Ortiz controlled Goyep and Royal Returns, directly or indirectly, and did not act in good faith or knowingly induced, directly or indirectly, Goyep's and Royal Return's conduct alleged in this Count.  Therefore, pursuant to Section 13(b) of the Act, as amended, to be codified at 7 U.S.C. § 13c(b), Ortiz is liable for Goyep's and Royal Return's violations

of Sections 4b(a)(2)(A)-(C) of the Act, as amended by the CRA, to be codified at 7 U.S.C.

§§ 6b(a)(2)(A)-(C).  Pursuant to Section 13(b) of the Act, Ortiz is also liable for Goyep's

violations of Regulation 5.3(a)(3)(i), to be codified at 17 C.F.R. § 5.3(a)(3)(i).

33.     The foregoing acts, misrepresentations and omissions of Ortiz occurred within

the scope of his employment, office or agency with Goyep and Royal Returns; therefore,

pursuant to Section 2(a)(1)(B) of the Act, as amended, to be codified at 7 U.S.C.

§ 2(a)(1)(B), and Regulation 1.2, 17 C.F.R. § 1.2 (2010), Goyep and Royal Returns are liable

for Ortiz's acts, misrepresentations and omissions in violation of Sections 4b(a)(2)(A)-(C) of

the Act, as amended by the CRA, to be codified at 7 U.S.C. §§ 6b(a)(2)(A)-(C), and Goyep is

therefore liable for Ortiz's acts and failures in violation of Regulation 5.3(a)(3)(ii).

**<u>Need for Permanent Injunction and Other Ancillary Equitable Relief</u>**

34.     Plaintiff has made a showing that Defendants Ortiz, Goyep and Royal Returns

have engaged, are engaging, or are about to engage in acts and practices in violation of the

Act and Commission Regulations.  Notwithstanding their default, the totality of the

circumstances establish that, unless permanently restrained and enjoined by this Court, there

is a reasonable likelihood that Defendants will continue to engage in the acts and practices

alleged in the Complaint and in similar acts and practices in violation of the Act and

Regulations.

35.     Plaintiff has made a showing that Defendants Ortiz, Goyep and Royal Returns

should be held jointly and severally liable for their ill-gotten gains, which total $ 292,676.62.

36.     Plaintiff has made a showing that Relief Defendants L. Ortiz and Natural Health have received from Defendants ill-gotten gains that combined total $20,604, and that neither L. Ortiz nor Natural Health have a legitimate claim to those funds.

37.     Plaintiff has made a showing that a joint and several civil monetary penalty of $878,000, the equivalent of three times their ill-gotten gains, should be assessed against Defendants Ortiz, Goyep and Royal Returns.

### III. ORDER OF PERMANENT INJUNCTION

**A.      Prohibition on Conduct in Violation of the Act**

**IT IS HEREBY ORDERED** that:

1.     Ortiz, Goyep and Royal Returns, and their officers, agents, servants, employees, attorneys and all other persons who are in active concert with them are permanently restrained, enjoined and prohibited from directly or indirectly, in connection with any order to make, or the making of, any contract of sale of any commodity for future delivery, or any agreement, contract or transaction in foreign currency that is margined or leveraged ("forex"), made, or to be made, for or on behalf of or with any persons cheating or defrauding or attempting to cheat or defraud others; willfully making or causing to be made to such other person any false report or statement thereof; or willfully deceiving or attempting to deceive other persons by any means whatsoever in regard to any such order or contract or the disposition or execution of any such order or contract, or in regard to any act of agency performed with respect to such order or contract for such persons;  in violation of Sections 4b(a)(2)(A) – (C) of the Act, as amended by the CRA and the Dodd-Frank Act, to be codified at §§ 6b(a)(2)(A)-(C);

2.      Ortiz and Goyep, and all persons insofar as they are acting in the capacity of agents, servants, employees, successors, assigns, or attorneys of Defendants Ortiz and Goyep, and all persons insofar as they are acting in active concert or participation with Defendants who receive actual notice of this Order by personal service or otherwise, shall be permanently prohibited, restrained and enjoined from engaging, directly or indirectly, in conduct in violation of Regulations 5.3(a)(3)(i) and (ii), to be codified at 17 C.F.R. §§ 5.3(a)(3)(i) and (ii).

**B.      <u>Prohibition on Activities Related to Trading and Registration</u>**

3.  **IT IS FURTHER ORDERED THAT** Ortiz, Goyep and Royal Returns and all persons insofar as they are acting in the capacity of agents, servants, employees, successors, assigns, or attorneys of Ortiz, Goyep and Royal Returns, and all persons insofar as they are acting in active concert or participation with Ortiz, Goyep and Royal Returns who receive actual notice of this Order by personal service or otherwise, shall be permanently restrained, enjoined and prohibited from directly or indirectly:

a.      trading on or subject to the rules of any registered entity, as that term is defined in Section 1a of the Act, as amended by the CRA, 7 U.S.C. § 1a;

b.      entering into any transactions involving commodity futures, options on commodity futures, commodity options (as that term is defined in Regulation 32.1(b)(1), 17 C.F.R. § 32.1(b)(1) (2010)) ("commodity options"), and/or foreign currency (as described in Sections 2(c)(2)(B) and 2(c)(2)(C)(i) of the Act, as amended by the CRA) ("forex contracts") for their own personal account or for any account in which they have a direct or indirect interest;

c.      having any commodity futures, options on commodity futures, commodity options, and/or forex contracts traded on their behalf;

d.      controlling or directing the trading for or on behalf of any other person or entity, whether by power of attorney or otherwise, in any account involving

commodity futures, options on commodity futures, commodity options, and/or forex contracts;

      e.     soliciting, receiving, or accepting any funds from any person for the purpose of purchasing or selling any commodity futures, options on commodity futures, commodity options, and/or forex contracts;

      f.     applying for registration or claiming exemption from registration with the Commission in any capacity, and engaging in any activity requiring such registration or exemption from registration with the Commission, except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2010); and

      g.     acting as a principal (as that term is defined in Regulation 3.1(a), 17 C.F.R. § 3.1(a)(2011)), agent or any other officer or employee of any person registered, exempted from registration or required to be registered with the Commission, except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2010);

    4.     Defendants and all persons insofar as they are acting in the capacity of agents, servants, employees, successors, assigns, or attorneys of Defendants, and all persons insofar as they are acting in active concert or participation with Defendants who receive actual notice of this Order by personal service or otherwise, shall remove or cause to be removed from the Internet all websites posted or authorized by them to be posted in which they solicit or accept orders or accounts from customers in connection with the purchase or sale of any commodity interest or forex contract, accounts for the purchase or sale of commodity interests or forex contracts and/or any system related to the purchase or sale of commodity interest or forex contracts, including but not limited to the website www.forexfuturestrader.com, the Uniform Resource Locator ("URL") associated with such domain name, and/or any other such domain name or URL created, operated, hosted and/or authorized by any of the Defendants, in whole or in part within 10 days of the entry of this Order. This includes, but is not limited to, submitting a removal request of the domain

name(s) associated with the aforementioned conduct and corresponding URL(s) to the appropriate web-host provider and/or domain name registration company.

    5.     Any person or entity providing web-hosting or domain name registration services in the United States for any website, domain name or affiliated URL under the ownership of any of the Defendants, in whole or in part, which any of the Defendants uses to solicit or accept orders or accounts from non-ECPs in connection with forex transactions or to offer to be the counterparty to customers' forex transactions, including, but not limited to, www.forexfuturestrader.com, the URL associated with such domain name, and/or any other domain name or URL created, operated, hosted and/or authorized by any of the Defendants, in whole or in part, who receives actual notice of this Order by personal service or otherwise shall:

    a.     remove or cause to be removed from the Internet all webpages, within their control, which are posted or authorized or to be posted or authorized by any of the Defendants or any persons and entities insofar as they are acting in the capacity of agents, servants, employees, successors, assigns, or attorneys of any of the Defendants , in which any of the Defendants 1) solicits or accepts orders or accounts from non-ECPs in connection with forex transactions; or 2) offers to be the counterparty to customers' forex transactions;

    b.     preserve all documents related to any website operated, in whole or in part, under the name forexfuturestrader.com, as well as any website that is substantially identical in appearance to that website; and

    c.     immediately notify counsel for the CFTC of any other web page or website operated or controlled by or on behalf of any of the Defendants.

**C.      Scope of Injunction**

The injunctive and other provisions of this Order shall be binding on Defendants, upon any person insofar as he or she is acting in the capacity of officer, agent, servant, employee or attorney of Defendants, and upon any person who receives actual notice of this Order by personal service or otherwise insofar as such person is acting in active concert or participation with Defendants.

**IV.**

**RESTITUTION, DISGORGEMENT, CIVIL MONETARY PENALTY AND ANCILLARY RELIEF**

**A.      Defendants' Restitution Obligation**

1.      Ortiz, Goyep and Royal Returns are jointly and severally liable for restitution in the amount of $292,676.62 plus pre-judgment interest of $ 40,666.11 for a prejudgment total of $ 333,342.73 and post-judgment interest ("Defendants' Restitution Obligation"). The Defendants' Restitution Obligation shall commence immediately upon entry of this Order.

2.      The Defendants' Restitution Obligation shall not limit the ability of any customer to prove that a greater amount is owed, and nothing herein shall be construed in any way to limit or abridge the rights of any customers whose funds were given to the Defendants that exist under state or common law.

3.      Pre-judgment interest was determined by a quarterly calculation using the underpayment rate established quarterly by the Internal Revenue Service pursuant to 26 U.S.C. § 6621(a)(2) from the date of filing of the Complaint to April 30, 2011.

4.      Post-judgment interest on the Defendants' Restitution Obligation shall accrue commencing on the date of entry of this Order and shall be determined by using the Treasury Bill rate prevailing on the date of entry of this Order pursuant to 28 U.S.C. § 1961.

5.      The Defendants' Restitution Obligation shall be reduced by the amount of any payment made to satisfy the Relief Defendants' Disgorgement Obligation herein.

6.      Pursuant to Fed. R. Civ. P. 71, customers of Ortiz, Goyep and Royal Returns are explicitly made intended third-party beneficiaries of this Order and may seek to enforce obedience of this Order to obtain satisfaction of any portion of the restitution that has not been paid by the Defendants.

**B.      Relief Defendants' Disgorgement**

1.      L. Ortiz and Natural Health shall be jointly and severally liable for disgorgement in the amount of $20,604, plus pre-judgment interest in the amount of $784 for a prejudgment total of $21,388 and post-judgment interest ("Relief Defendants' Disgorgement Obligation"). The Relief Defendants' Disgorgement Obligation shall commence immediately upon entry of this Order. The Relief Defendants' Disgorgement Obligation represents the amount of benefits that L. Ortiz and Natural Health personally received from the Defendants as a result of the course of illegal conduct alleged in the Complaint.

2.      The Relief Defendants' Disgorgement Obligation shall not limit the ability of any customer to prove that a greater amount is owed, and nothing herein shall be construed in any way to limit or abridge the rights of any customers of the Defendants to recover funds from the Defendants or Relief Defendants that exist under state or common law.

3.      Pre-judgment interest was determined by a quarterly calculation using the underpayment rate established quarterly by the Internal Revenue Service pursuant to 26 U.S.C. § 6621(a)(2) from the date of filing of the Complaint to April 30, 2011.

4.      Post-judgment interest on the Relief Defendants' Disgorgement Obligation shall accrue commencing on the date of entry of this Order and shall be determined by using the Treasury Bill rate prevailing on the date of entry of this Order pursuant to 28 U.S.C. § 1961.

**C.      Role of the Monitor**

1.      Appointment of Monitor: To receive payments from Defendants on their Defendants' Restitution Obligation and Relief Defendants on their Relief Defendants' Disgorgement Obligation and to make distribution to Defendants' customers, the Court appoints the National Futures Association ("NFA") as Monitor.  The Monitor shall receive payments from Ortiz, Goyep, Royal Returns L. Ortiz and Natural Health and make distributions as set forth below.  Because the Monitor is acting as an officer of the Court in performing these services, it shall not be liable for any action or inaction arising from its appointment as Monitor, other than actions involving fraud.

2.      Defendants and Relief Defendants shall make their required restitution and disgorgement payments under this Order in the name of "Goyep Fund" and shall send such payments by electronic funds transfer, or by U.S. postal money order, certified check, bank cashier's, or bank money order to the Office of Administration, National Futures Association, 300 South Riverside Plaza, Suite 1800, Chicago, Illinois 60606, under a cover letter that identifies the Defendant or Relief Defendant making the payment and the name

and docket number of the proceeding.  The Defendant or Relief Defendant making the payment shall simultaneously transmit copies of the cover letter and the form of payment to (a) Director, Division of Enforcement, Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st Street, NW, Washington, D.C. 20581, and (b) Chief, Office of Cooperative Enforcement, at the same address.

3.      The Monitor shall oversee Defendants' Restitution Obligation and Relief Defendants' Disgorgement Obligation and shall have the discretion to determine the manner of distribution of funds in an equitable fashion to Defendants' customers or may defer distribution until such time as it may deem appropriate.  In the event that the amount of payments to the Monitor are of a *de minimis* nature such that the Monitor determines that the administrative costs of making a distribution to Defendants' customers is impractical, the Monitor may, in its discretion, treat such disgorgement payments as civil monetary penalty payments, which the Monitor shall forward to the Commission following the instructions for civil monetary penalty payments as set forth in Section D.3.below.

4.      Defendants and Relief Defendants shall execute any documents necessary to release funds by any repository, bank, investment or other financial institution wherever located, in order to make partial or total payment toward the Defendants' Restitution Obligation or Relief Defendants' Disgorgement Obligation.

5.      To the extent that any funds accrue to the U.S. Treasury as a result of the Defendants' Restitution Obligation or Relief Defendants' Disgorgement Obligation, such funds shall be transferred to the Monitor for disbursement in accordance with the procedures set forth above.

**D.**   **Civil Monetary Penalties**

**IT IS FURTHER ORDERED** that:

1.      Ortiz , Goyep and Royal Returns shall each pay a joint and several civil monetary penalty in the amount of $878,000, plus post judgment interest (collectively, the "CMP Obligation").

2.      Post-judgment interest on the Defendants' CMP Obligation shall accrue beginning on the date of entry of this Order and shall be determined by using the Treasury Bill rate prevailing on the date of entry of this Order pursuant to 28 U.S.C. § 1961.

3.      The Defendants shall pay the CMP Obligation by electronic funds transfer, U.S. postal money order, certified check, bank cashier's check, or bank money order.  If payment is to be made by other than electronic funds transfer, the Defendants shall make the payment payable to the Commodity Futures Trading Commission and send to the following address:

> Commodity Futures Trading Commission
> Division of Enforcement
> Attention:  Marie Bateman – AMZ-300
> DOT/FAA/MMAC
> 6500 South MacArthur Boulevard
> Oklahoma City, OK 73169
> Telephone: 405-954-6569

4.      If the payment is to be made by electronic funds transfer, the Defendants shall contact Marie Bateman or her successor at the above address to receive payment instructions and shall fully comply with those instructions.  The Defendants shall accompany the payment of the penalty with a cover letter that identifies the paying Defendant and the name and docket number of this proceeding.  The Defendants shall simultaneously transmit copies

of the cover letter and the form of payment to (a) Director, Division of Enforcement, U.S.

Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st Street, NW,

Washington, D.C. 20581, and (b) the Chief, Office of Cooperative Enforcement, at the same

address.

**E.**    **Priority of Monetary Penalties and Partial Payments**

1.    All payments by Ortiz, Goyep and Royal Returns herein, pursuant to this

Order, shall first be applied to satisfaction of their joint and several Defendants' Restitution

Obligation, consistent with the authority granted the Monitor above.  After satisfaction of

the Defendants' Restitution Obligation, payments by the Defendants shall be applied to

satisfy their CMP Obligation.

2.    Any acceptance by the Commission and/or Monitor of partial payment from

any of the Defendants of their Defendants' Restitution Obligation and/or CMP Obligation,

and a partial payment from either of the Relief Defendants of their Disgorgement

Obligation,  shall not be deemed a waiver of the Defendants' or Relief Defendants'

obligation to make further payments pursuant to this Order, or a waiver of the Commission's

right to seek to compel payment from the Defendants or Relief Defendants of any remaining

balance.

**F.**    **Miscellaneous Provisions**

**IT IS FURTHER ORDERED THAT:**

1.        Prohibition on Transfer of Funds: The Defendants and Relief

Defendants shall not transfer or cause others to transfer funds or other property to the

21

custody, possession or control of any other person for the purpose of concealing such funds or property from the Court, the Plaintiff or any officer that may be appointed by the Court.

      2.     <u>Partial Lifting of Freeze</u>: Notwithstanding any order entered in this proceeding freezing Defendants' and Relief Defendants' assets and/or prohibiting Defendants' and Relief Defendants' transfer of funds or other property, such assets, funds, or property may be used to satisfy Defendants' joint and several Restitution Obligation and the CMP Obligation, and Relief Defendants' Disgorgement Obligation as set forth above.

      3.     <u>Lifting of Freeze</u>: Upon full satisfaction by the Defendants of their Disgorgement Obligation and CMP Obligation, and the Relief Defendants' Disgorgement Obligation, as set forth above, any order entered in this proceeding freezing Defendants' or Relief Defendants' assets and/or prohibiting Defendants' or Relief Defendants' transfer of funds or other property shall be lifted.

      4.     <u>Notices</u>: All notices required to be given by any provision in this Order shall be sent by certified mail, return receipt requested, as follows:

> Notice to Commission:    Susan B. Padove
>                              Commodity Futures Trading Commission
>                              525 W. Monroe, Suite 1100
>                              Chicago, Illinois 60661

All such notices to the Commission shall reference the name and docket number of this proceeding.

      5.     <u>Invalidation</u>: If any provision of this Order or the application of any provision or circumstance is held invalid, the remainder of this Order, and the application of the provision to any other person or circumstance, shall not be affected by the holding.

6.      <u>Continuing Jurisdiction of this Court</u>: This Court shall retain jurisdiction of this case to assure compliance with this Order and for all other purposes related to this action.

**CONCLUSION**

For the reasons above, the CFTC's Motion for Entry of Default Judgment (ECF No. 44) against Defendants Ortiz, Goyep and Royal Returns and Relief Defendants L. Ortiz and Natural Health and for a permanent injunction against Defendants Ortiz, Goyep and Royal Returns is GRANTED.  The Clerk of the Court is instructed to CLOSE this case. All pending motions are DENIED AS MOOT.

DONE AND ORDERED in Chambers at Miami, Florida, this ___ day of June, 2011.

K. MICHAEL MOORE
UNITED STATES DISTRICT JUDGE

cc: All counsel of record

David L. Ortiz
4172 Abington Woods Cir.
Vero Beach, FL 32967

Goyep International, Inc.
4172 Abington Woods Cir.
Vero Beach, FL 32967

Royal Returns, Inc.
4172 Abington Woods Cir.
Vero Beach, FL 32967

Loredana Ortiz
4172 Abington Woods Cir.
Vero Beach, FL 32967

Natural Health Matters, L.L.C.
4172 Abington Woods Cir.
Vero Beach, FL 32967